## Affidavit

\* \* \* \* \* \* \* \*

Todd E. Tremaine, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), United States Department of Justice, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I have been a Special Agent (SA) with the ATF since July of 2001.   I am currently assigned to the Lexington III Field Office, London Satellite Office, and have been so employed since June 2008.   Prior to this, I was assigned to the ATF Louisville I Group from July 2001 until June 2008.   From February 2004 until February 2008, I was assigned to the Drug Enforcement Administration (DEA) Louisville District Office (DO) Task Force.   In this capacity I have investigated numerous complex firearms and narcotics cases and have participated in the execution of search warrants and arrests resulting from the unlawful possession of firearms and distribution of controlled substances.

2.    I have conducted or assisted in numerous criminal investigations of alleged violations of the Controlled Substance Act, Gun Control Act, and National Firearms Act.   Your affiant has attended various training courses on drug trafficking, asset forfeiture, money laundering, and firearms offenses, and the investigation thereof. I am familiar with and/or have participated in all the normal methods of investigation, including but not limited to, visual surveillance, the questioning of witnesses, and the use of cooperating witnesses and/or confidential informants.

3.    As a result of my training and experience, I am familiar with Federal criminal laws and know that it is a violation of:

- Title 18 U.S.C. § 922(g)(1), for any person who has been convicted in any court of crime punishable for a term exceeding one year to possess, in or affecting commerce, a firearm or ammunition;

- Title 18 U.S.C. § 922(g)(3), for any person who is an unlawful drug user to possess, in or affecting interstate commerce, a firearm or ammunition; and

- Title 21 U.S.C. § 846, for any person to conspire with another to distribute a controlled substance.

1

4.     The facts and information contained in this affidavit are based upon my personal knowledge and the investigation and observations of other law enforcement officers involved in this investigation, including the Kentucky State Police (KSP), the Williamsburg (KY) Police Department (WPD), and the Fontana (CA) Police Department (FPD).   This affidavit contains information necessary to support probable cause for this application.   It is not intended to include each and every fact and matter observed by me or known to the government.

## PROBABLE CAUSE

5.     On February 19, 2014, I was contacted by WPD Chief Wayne Bird regarding an individual named TONY PETREY.   Chief Bird advised me that WPD officers had went to PETREY's residence in Whitley County earlier in the evening to investigate a drug complaint.   While there, officers asked PETREY was asked if he had any drugs on his person.   PETREY admitted to having drugs in his pocket. PETREY permitted officers to search his person and they recovered small amounts of suspected crystal methamphetamine (crystal meth) and heroin, both packaged for resell.   WPD officers arrested PETREY.   Officers also arrested PETREY's girlfriend, MARY CURETON, on an outstanding warrant.   When CURETON was booked in the jail later that night, jail staff seized suspected crystal meth from her purse.

6.     PETREY was transported to the Williamsburg Police Department where I interviewed him.   I advised PETREY of his Constitutional rights.   PETREY waived his rights and agreed to be interviewed.   PETREY stated that he had been receiving shipments of crystal meth and heroin from an individual that he met in prison named LARRY GUTIERREZ.   PETREY was shown a photograph of LARRY GUTIERREZ and he positively identified GUTIERREZ as being his source of supply.   PETREY stated that he had been receiving drugs from GUTIERREZ for the last couple months.   PETREY stated that GUTIERREZ was living in California.   PETREY said he would send MoneyGram money orders to GUTIERREZ, and, in return, GUTIERREZ would then ship him the drugs through the United States Postal Service (USPS).   PETREY stated that the most crystal meth that he received in one shipment was approximately 3 ounces.   PETREY said the largest amount of heroin he received at one time was around one-half (½) an ounce.

7.     PETREY would then sell the crystal meth and heroin that he received from GUTIERREZ in Whitley County in southeastern Kentucky.   PETREY said some of his larger customers were DAVID POWERS and JESSIE (J.C.) MAYS. PETREY said he sold POWERS a ½ ounce of crystal meth every time he received a shipment from GUTIERREZ.   PETREY stated that he sold MAYS between ½ ounce to 1 ounce every time he received crystal meth from GUTIERREZ.

8.     On February 20, 2014, law enforcement personnel with the ATF, KSP, and

2

WPD went to the residence of DAVID POWERS in Whitley County. POWERS invited officers inside and gave consent to search his residence. During a non-custodial interview with POWERS, POWERS admitted to using crystal meth 5-7 times within the past two months. POWERS stated that he had firearms in his residence, and that every firearm in his residence was loaded. POWERS then stated that he had used crystal meth approximately 7-10 times since October 2013. POWERS also admitted to throwing ¼ gram of crystal meth out of his vehicle prior to a traffic stop by the WPD several days earlier. POWERS stated he had the drugs with him because he was fixing to "get lucky" with a girl. POWERS was also found to be in possession of a .45 caliber handgun at the time of the aforementioned traffic stop.

9.    POWERS admitted to receiving crystal meth from TONY PETREY approximately 5-6 times over a 4-5 month period. POWERS said the most he ever received at one time was around 1/8 ounce. POWERS later admitted to providing crystal meth to girls in exchange for sex.   As stated earlier, POWERS gave officers consent to search his residence. During this search, officers located and seized a loaded Taurus .45 caliber pistol and a loaded Rossi 20 gauge shotgun in the master bedroom. In this same room, officers found a security camera system and monitor, along with a two-way radio.   In addition, officers also located drug paraphernalia in this bedroom.

10.    When officers searched the basement of POWERS' residence, they located ROBERT SCOTT SHEPPARD hiding in the basement. SHEPPARD is a multi-convicted felon. I advised SHEPPARD of his rights. SHEPPARD admitted to his identity and stated that he knew he was a fugitive, and that he was wanted on charges from Louisiana. SHEPPARD stated that he had been sleeping on the couch in DAVID POWERS' basement, and when he woke up, he saw police officers outside through the security monitor. A loaded Titan .25 caliber handgun was found on a coffee table within 2 feet of where SHEPPARD had been sleeping. Moreover, a loaded Remington 12 gauge shotgun was found sitting on an adjoining couch, within 5 feet of where SHEPPARD was sleeping. SHEPPARD admitted that he knew there were firearms all over the house, and pointed in the direction of the coffee table, but denied that the firearms belonged to him. Additionally, officers located a bag containing suspected methamphetamine precursors within approximately 10' from where SHEPPARD said he was sleeping. The precursors include a plastic baggie containing coffee filters soaked in Coleman fuel (one filter appeared to containing suspected methamphetamine residue), funnels, pill crusher, rubber gloves, and a pack of coffee filters.

11.    A further search of POWERS' residence resulted in the recovery of 9 additional firearms in the basement, as well as additional drug paraphernalia – to include straws used to snort drugs. SHEPPARD stated that he had known for a long time that DAVID POWERS had a lot of firearms in his (POWERS') residence. SHEPPARD said that he was okay with the idea of being in POWERS' residence,

3

despite the fact that he was a felon, because he did not think the police would be coming to that location (POWERS' residence). SHEPPARD also admitted to shooting and injuring an individual named JOHNNY HILL a couple years ago in an incident that took place in Whitley County, Kentucky. SHEPPARD said he knew that TONY PETREY was DAVID POWERS' source of supply, and added that POWERS provided crystal meth to girls in exchange for sex.

12. Through COURTNET, I found that ROBERT SCOTT SHEPPARD has 4 total felony convictions – to include a 2010 conviction in Whitley County for being a convicted felon in possession of a firearm.

13. In light of the information previously provided by TONY PETREY, I contacted FPD (CA) Detective Justin Lain on February 24, 2014. Det. Laing stated that he was very familiar with LARRY GUTIERREZ, as he had been the target of one of Det. Laing's prior investigations. Det. Laing stated that in October 2013, his department investigated GUTIERREZ after he attempted to ship approximately 8 ounces of crystal meth to Kentucky. Det. Laing stated that his department had seized the crystal meth from the Post Office and had submitted the case to the local district attorney's office for prosecution. Det. Laing also stated that GUTIERREZ had cooperated with his department and provided information to them in the past.

14. Between February 24 and February 25, officers utilized TONY PETREY to place a series of recorded calls and text messages to GUTIERREZ. During the recorded phone calls, PETREY ordered one ounce of "ice," a slang term for crystal meth. GUTIERREZ informed PETREY that he (PETREY) needed to send the money first. Det. Laing listened to a recorded phone call between PETREY and GUTIERREZ, and positively identified the voice as being that of GUTIERREZ. Just prior to wiring the money, GUTIERREZ provided PETREY with the name "ROXANNE MEDINA" and instructed PETREY to put that name on the wire transfer.

15. On the evening of February 25, 2014, using $1,000 in ATF authorized funds, law enforcement wired a MoneyGram to ROXANNE MEDINA. PETREY sent GUTIERREZ a text message with a confirmation number, and the money was picked up shortly thereafter. Surveillance cameras from the Wal-Mart in Rancho Cucamonga, CA, showed GUTIERREZ and a female, later identified by FPD personnel as ROXANNE MEDINA, enter the store and pick up the cash.

16. On this same day, ATF, KSP, and WPD personnel went to the residence of JESSIE (J.C.) MAYS in Whitley County, KY. I conducted a non-custodial interview with MAYS. During the interview, MAYS admitted to receiving crystal meth from TONY PETREY. MAYS stated that he had received crystal meth from PETREY in ¼ - ½ ounce quantities on 5-6 occasions. MAYS then stated that the average amount of crystal meth that he purchased from PETREY was around 1/8 of an ounce. MAYS said the most he received from PETREY at one time was around

4

½ an ounce. MAYS admitted to selling some of the crystal meth and using "a lot of it." MAYS further admitted to having wired money to PETREY'S source of supply in California on PETREY's behalf in the past.

17. On February 26, 2014, FPD officers contacted LARRY GUTIERREZ and asked him to meet with them. GUTIERREZ was advised of his Constitutional rights. GUTIERREZ waived his rights and admitted to sending crystal meth to TONY PETREY in the past. GUTIERREZ further admitted to sending PETREY crystal meth earlier that same day. Following the interview, officers executed a search warrant at GUTIERREZ'S residence in California. During the search, they found approximately 17 grams of suspected crystal meth and a sales receipt documenting a package that was shipped via the USPS on February 26, 2014.

18. I contacted the USPS about this shipment of drugs. On March 1, 2014, the USPS contacted me and advised that the package from California was at the Post Office in Williamsburg, KY. WPD Det. Bobby Freeman went to the Post Office and seized the package. Inside, Det. Freeman located approximately 1 ounce of suspected crystal meth. The suspected crystal meth field-tested positive for methamphetamine.

19. On March 19, 2014, the ATF, KSP, and WPD executed a search warrant at the residence of JESSIE (J.C.) MAYS in Whitley County, KY. During the search, officers found a small amount of crystal meth, several plastic baggies, digital scales, and a surveillance camera system. I again interviewed MAYS and advised him of his Constitutional rights. MAYS waived his rights and admitted to receiving crystal meth from TONY PETREY on 5-6 occasions, and further admitted to receiving crystal meth from another source of supply – CLARENCE EGNER – on numerous occasions.

20. Based on my training and experience, I know that Taurus, Titan, and Rossi firearms are not manufactured in the Commonwealth of Kentucky. I also know that Remington Model 870 shotguns are not manufactured in the Commonwealth of Kentucky.

21. I have contacted MoneyGram, who informed me that TONY PETREY first wired money to California in or about December 23, 2013, in the amount of $1,000, to a recipient named "Tammy Gutierrez." MoneyGram had a total record of eight (8) wire transfers sent from TONY PETREY to California between December 23, 2013, and February 11, 2014.

## CONCLUSION

22. Based on my training and experience, and the information set forth in this affidavit, I assert that there is probable cause to believe that DAVID POWERS possessed a firearm while being an unlawful drug user, in violation of title 18

5

U.S.C. § 922(g)(3).   I also assert there is probable cause to believe that ROBERT SCOTT SHEPPARD possessed a firearm while being a convicted felon in violation of Title 18 U.S.C. § 922(g)(1).   Moreover, I contend that there is probable cause to believe that LARRY GUTIERREZ, TONY PETREY, JESSIE MAYS, and DAVID POWERS conspired with each other to distribute a controlled substance, specifically crystal methamphetamine, in violation of 21 U.S.C. § 846.   I believe there is probable cause to arrest POWERS, SHEPPARD, PETREY, MAYS, and GUTIERREZ for these violations.

SA Todd E. Tremaine
ATF


Subscribed and sworn to before me on this /6TL day of April, 2014.

Hanly A. Ingram
UNITED STATES MAGISTRATE JUDGE

6